UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

Sandra J. Eddy,

                              Plaintiff,

                                                          **Hon. Hugh B. Scott**

                    v.                                     01CV245A

                                                          **Report
                                                          and
COMMISSIONER OF SOCIAL                                    Recommendation**
SECURITY[1],

                              Defendant.

Before the Court are the parties' respective motions for judgment on the pleadings

(Docket Nos. 6 and 8).

## INTRODUCTION

This is an action brought pursuant to 42 U.S.C. § 405(g) to review the final determination

of the Commissioner of Social Security that plaintiff is not disabled and, therefore, is not entitled

to disability insurance benefits and/or Supplemental Security Income benefits.

## PROCEDURAL BACKGROUND

The plaintiff, Sandra J. Eddy ("Eddy" or "plaintiff"), filed an application for disability

insurance benefits on May 12, 1998 (R. 90).  That application was denied initially and on

reconsideration.  The plaintiff appeared before an Administrative Law Judge ("ALJ"), who

---

[1]For convenience, defendant will be identified by the official title only.  See Fed. R. Civ.
P. 25(d); 42 U.S.C. § 405(g) (action survives despite change in office of Commissioner).

considered the case <u>de novo</u> and concluded, in a written decision dated December 15, 1999, that

the plaintiff was not disabled within the meaning of the Social Security Act.  The ALJ's decision

became the final decision of the Commissioner on February 8, 2001, when the Appeals Council

denied plaintiff's request for review.

      Plaintiff subsequently commenced this action (Docket No. 1).  The parties moved for

judgment on the pleadings.


## **FACTUAL BACKGROUND**[2]

      The plaintiff asserts that she has been disabled since October 13, 1997 due to cervical

impairments and carpel tunnel syndrome.  She was 45 years old at the time of her application.

she has a high school equivalency.  Eddy's past relevant work was that of an assembler in a

factory making air conditioner parts. (R. 29, 34).

      The ALJ found that Eddy suffers from severe carpel tunnel syndrome, but that her

condition does not meet the requirement of an Appendix I listing.  The ALJ determined that Eddy

could not perform her past relevant factory work, and that her residual functional capacity was

limited in that she could lift no more than 5 pounds with both hands, could not perform repetitive

movement of her neck, had limited rotation in her neck, and limited repetition of use in both

hands.  Although these limitations impeded Eddy's ability to perform a full range of sedentary

work, the ALJ determined that she could perform jobs such as security guard, ticket taker or

night clerk at a motel. (R. 18-19).

---

[2]  References noted as "(R.___)" are to the certified record of the administrative
proceedings.

## DISCUSSION

The only issue to be determined by this Court is whether the ALJ's decision that the plaintiff was not under a disability is supported by substantial evidence.  See 42 U.S.C. § 405(g); Rivera v. Sullivan, 923 F.2d 964, 967 (2d Cir. 1991).  Substantial evidence is defined as "'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated  Edison Co. v. National Labor Relations Bd., 305 U.S. 197, 229 (1938)).

For purposes of both Social Security Insurance and disability insurance benefits, a person is disabled when she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A).

Such a disability will be found to exist only if an individual's "physical or mental impairment or impairments are of such severity that [he or she] is not only unable to do [his or her] previous work but cannot, considering [his or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. §§ 423(d)(2)(A) & 1382c(a)(3)(B).

The plaintiff bears the initial burden of showing that her impairment prevents her from returning to her previous type of employment.  Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982).  Once this burden has been met, "the burden shifts to the [Commissioner] to prove the existence of alternative  substantial gainful work which exists in the national economy and which

the plaintiff could perform."  Id.; see also Dumas v. Schweiker, 712 F.2d 1545, 1551 (2d Cir.

1983); Parker v. Harris, 626 F.2d 225, 231 (2d Cir. 1980).

     In order to determine whether the plaintiff is suffering from a disability, the ALJ must

employ a five-step inquiry:

> (1) whether the plaintiff is currently working;
>
> (2) whether the plaintiff suffers from a severe impairment;
>
> (3) whether the impairment is listed in Appendix 1 of the relevant regulations;
>
> (4) whether the impairment prevents the plaintiff from continuing her past relevant work; and
>
> (5) whether the impairment prevents the plaintiff from doing any kind of work.

20 C.F.R. §§ 404.1520 & 416.920; Berry, supra, 675 F.2d at 467.  If a plaintiff is found to be

either disabled or not disabled at any step in this sequential inquiry, the ALJ's review ends.

20 C.F.R. §§ 404.1520(a) & 416.920(a); Musgrave v. Sullivan, 966 F.2d 1371, 1374 (10th Cir.

1992).  However, it should be noted that the ALJ has an affirmative duty to fully develop the

record.  Gold v. Secretary, 463 F.2d 38, 43 (2d Cir. 1972).

     In order to determine whether an admitted impairment prevents a claimant from

performing her past work, the ALJ is required to review the plaintiff's residual functional

capacity and the physical and mental demands of the work she has done in the past.  20 C.F.R. §§

404.1520(e) & 416.920(e).  When the plaintiff's impairment is a mental one, special "care must

be taken to obtain a  precise description of the particular job duties which are likely to produce

tension and anxiety, e.g. speed, precision, complexity of tasks, independent judgments, working

with other people, etc., in order to determine if the claimant's mental impairment is compatible

with the performance of such work." <u>See</u> Social Security Ruling 82-62 (1982); <u>Washington v.</u>

<u>Shalala</u>, 37 F.3d 1437, 1442 (10th Cir. 1994).  The ALJ must then determine the individual's

ability to return to her past relevant work given her residual functional  capacity.  <u>Washington</u>,

<u>supra</u>, 37 F.3d at 1442.

  In the instant case, the issue is whether the ALJ erred at step five of the analysis. (Docket

No. 9 at page 3).  It is not disputed that the plaintiff suffers from cervical impairments which

limit her movements and from severe carpel tunnel syndrome. According to Dr. Eugene Cisek,

on February 1, 1995, an orthopedic evaluation revealed that Eddy suffered from "a moderate

temporary partial disability." (R. 201).  Dr. Cisek's September 17, 1996 evaluation found Eddy

to suffer from an impairment of  "mild permanency" demonstrating a moderate partial disability

(R. 195-197).  For purposes of plaintiff's Workman's Compensation claim, Dr. August J.

Domenico, a Chiropractor, found Eddy to be totally disabled as of June 18, 1997. (R. 243).  In a

July 15, 1997 report, Dr. Gaspare Alfano stated that his examination revealed that Eddy suffered

from a cervical sprain and had "a moderate to marked degree of disability." (R. 157).  He noted

that other medical reports regarding the plaintiff were not availabe for his review. (R. 157).   A

December 5, 1997 report from Dr. Patrick Hughes,  Eddy's treating physician,  noted neck pain

due to disc herniation and bilateral carpel tunnel syndrome causing numbness in the hands.  In

his opinion, Eddy's disability was "total" and could not return to work at that time (R. 193).  In a

report dated March 11, 1998, Dr. Hughes stated that Eddy suffered from "a marked, partial

disability" and still could not return to work. (R. 191).

Eddy underwent surgery for carpel tunnel syndrome in her right wrist on March 227, 1998. (R. 211). According to Dr. Owen Moy, who performed the surgery, Eddy was totally disabled on April 27, 1998. On August 8, 1998, Dr. Moy opined that he believed that Eddy could return to work with some restrictions. (R. 297).  However, on May 12, 1999, Dr. Moy stated that an examination revealed marked discomfort over the CMC joint of plaintiff's right hand.  He noted that new x-rays revealed "persistence and some progression of her CMC arthrosis." (R. 302.  This last report from Dr. Moy does not address whether or not Eddy was disabled from work.  Finally, according to Dr. Domenico, the record reflects that Eddy's carpel tunnel symptoms may also be impacted by her cervical disc herniation at C5-6. (R. 315).   As of January 1999, Dr. Domenico testified that Eddy was still disabled from returning to work at GM. (Docket No. 317-318).

The ALJ found that Eddy suffers from sever impairments and that she cannot return to her past relevant work.  The ALJ also found that Eddy cannot perform the full range of sedentary work. Notwithstanding the above, the ALJ determined that Eddy could perform certain jobs in the national economy.  The ALJ's determination in this regard is purportedly based upon the testimony of Timothy Jankowski, a vocational expert who testified at the administrative hearing. Jankowski testified that Eddy retained the residual functional capacity to perform light work with certain restrictions, including the positions of security guard, ticket taker, and motel night clerk. (R. 56-58).

The plaintiff argues that the ALJ erred because he concluded that the plaintiff could not perform a full range of sedentary work (R. 18), but then stated that plaintiff could perform the light work  positions noted by Jankowski.  (R. 56-57).   Further, the ALJ determined that these

jobs existed in sufficient number in the regional economy.  However, the plaintiff asserts that the ALJ's finding as to the number of security guard (1330) and night clerk (100) positions (R. 19), differs with the testimony of Jankowski (1230 and 50-75, respectively). (R. 58).  Eddy argues that the ALJ also erred in failing to fully credit her subjective complaints of pain due to her cervical herniation.  Finally, the plaintiff asserts that the ALJ failed to properly apply 20 C.F.R. Part 404, Subpt. P, Appendix 2, §201.00(h) because Eddy has restrictions relating to both of her hands.

The ALJ stated that she discounted Eddy's testimony in this regard because Eddy allegedly failed to obtain any treatment for her cervical impairment since December of 1997. (R. 14).  However, this conclusion is contradicted by the record.  Initially, it should be noted that the record reflects that the plaintiff's treating physician's were of the opinion that Eddy was not a candidate for aggressive treatment for her cervical condition. (R. 196, 154).  Moreover, contrary to the ALJ's determination, the record reflects that Eddy regularly received treatment for her cervical condition from Dr. Domenico  at least through January of 1999 (R. 311).

This case should be remanded for further administrative proceedings.  The record should be further developed as to whether the combination of the plaintiff's bilateral carpel tunnel syndrome and her cervical herniation further limit her ability to perform the jobs identified by the vocational expert.  The plaintiff's credibility as to the severity of her subjective complaints of pain relating to her cervical condition should also be reviewed in light of the fact that the record contradicts the ALJ's reasoning in that regard.  In addition, the ALJ must reconcile whether the plaintiff can still perform the jobs Jankowski described as light duty, notwithstanding the ALJ's determination that Eddy could perform less than the full range of sedentary positions.

**CONCLUSION**

For the foregoing reasons, this Court recommends that the decision of the Commissioner be VACATED and this matter be REMANDED for further administrative proceedings.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy to the Report & Recommendation to all parties.

**Any objections to this Report & Recommendation *must* be filed with the Clerk of this Court *within ten (10) days* after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b) and W.D.N.Y. Local Civil Rule 72.3(a).  <u>Failure to file objections to this report & recommendation within the specified time or to request an extension of such time waives the right to appeal any subsequent district court's order adopting the recommendations contained herein.</u>** Thomas v. Arn, 474 U.S. 140 (1985); <u>F.D.I.C. v. Hillcrest Associates</u>, 66 F.3d 566 (2d Cir. 1995); <u>Wesolak v. Canadair Ltd.</u>, 838 F.2d 55 (2d Cir. 1988).

The District Court on *de novo* review will ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance.  <u>See</u> <u>Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co.</u>, 840 F.2d 985 (1st Cir. 1988).

Finally, the parties are reminded that, pursuant to W.D.N.Y. Local Civil Rule 72.3(a)(3), "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be

8

supported by legal authority." **Failure to comply with the provisions of Rule 72.3(a)(3) may result in the District Court's refusal to consider the objection.**

So Ordered.


s/Hon. Hugh B. Scott

United States Magistrate Judge

Buffalo, New York
August 8, 2005